UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re ) | |
| ) | Case No. 6:11-bk-10129-KSJ |
| CARLOS ALBERTO JIMENEZ and ) | Chapter 11 |
| MARIBEL JIMENEZ, ) | |
| ) | |
| Debtor[s]. ) | |
| ) | |

MEMORANDUM OPINION GRANTING DEBTORS'
MOTION TO VALUE, SUSTAINING DEBTORS' OBJECTION
TO CLAIM, AND GRANTING DEBTORS' MOTION FOR CRAM DOWN.

Debtors object[1] to Alafaya Homeowners Association's secured proof of claim for a delinquent homeowners' association ("HOA") assessment and have filed a motion to determine the secured status of their claim under § 506(a)(1) of the Bankruptcy Code. Debtors also argue that Alafaya's claim is unsecured and, as such, Alafaya is not entitled to post-petition fees or expenses under § 506(b). Debtors also have filed a motion to cram down[2] Alafaya's unsecured claim under its plan of reorganization.[3]

Alafaya disputes that its lien is unsecured, arguing a relatively new Florida statute gives an HOA lien retroactive priority over other lien holders. Because Alafaya contractually subordinated its lien to all first mortgagees' liens and never recorded a claim of lien as required by the recently amended Florida statute, the statute does not apply. The Court grants debtors' motion to value, finding that Alafaya's claim is unsecured and sustains debtors' objection as to Alafaya's claim for post-petition fees and costs. Because debtors' plan will pay Alafaya the full value of its allowed unsecured claim, Alafaya is unimpaired, and debtors' motion for cram down is granted.

---

[1] Doc. No. 120.
[2] Doc. No. 136.
[3] Doc. No. 132.

**Debtors' Motion to Value is Granted**

After debtors filed bankruptcy on July 1, 2011, Alafaya filed a secured proof of claim in the amount of $1,025.55 consisting of (1) a delinquent HOA fee of $165 plus interest of $3.31, (2) legal fees and costs related to foreclosure work of $254.86, and (3) $602.38 in administrative and attorney's fees and expenses.[4] Alafaya documented its proof of claim as follows:

| | |
|---|---|
| Homeowners assessments due 03/01/11 | $165.00 |
| Interest @ 6% per annum through 07/01/11 | $ 3.31 |
| Administrative fees | $ 32.38 |
| Attorney's fees for mortgage foreclosure action | $ 250.00 |
| Attorney's costs for mortgage foreclosure action: | |
|    Copies | $ 3.20 |
|    Postage | $ 1.66 |
| Attorney's fees and costs for bankruptcy action | $ 570.00 |
| Total included in Proof of Claim | $ 1,025.55 |

Alafaya's claim arose from debtors' failure to pay normal homeowners' association fees associated with the ownership of their residential property in Oviedo, Florida.[5] The residence, located in the Alafaya Woods Neighborhood Development, is bound by a Declaration of Covenants, Conditions, Restrictions, Reservations and Easements for the Alafaya Woods Development (the "Declaration") recorded on February 22, 1985. According to the Declaration, the annual and special assessments, together with late charges, interest, and costs of collection, creates a continuing lien on the residence.[6]

Debtors purchased the residence subject to the Declaration with the help of a first mortgage loan from Federal National Mortgage ("Federal") in the amount of $236,000.[7] Federal recorded its mortgage lien on March 19, 2007.[8] Even though Federal recorded the mortgage *after* the Declaration was filed in the public records, Federal held a first priority mortgage lien because the

---

[4] Claim No. 13.
[5] Doc. No 120. The property is not debtor's principal residence.
[6] Doc. No. 131, Exhibit 1, Section 6.1. Presumably, Alafaya means that the lien relates back to the date the Declaration was recorded. *See Holly Lake Ass'n v. Federal Nat. Mortg. Ass'n,* 660 So.2d 266, 269 (Fla. 1995).
[7] Claim No. 19, Exhibit 2.
[8] Claim No. 19, Exhibit 3.

Declaration specifically subordinated any future HOA liens resulting from non-payment of fees to "any [other] mortgage recorded prior to recordation of a claim of lien."[9]

Upon debtors' bankruptcy, Federal filed a secured proof of claim in the amount of $286,352.74, which includes all amounts due under its note and mortgage, including late fees and interest.[10] Based on the undisputed value of the residence of $165,000,[11] Federal asserts it has an allowed secured claim of $165,000 and an allowed unsecured claim of $121,352.74.[12] Alafaya disputes Federal's priority claim and argues it has a superior, fully secured lien because a new Florida statute enacted in 2008 allows Alafaya's lien to trump Federal's lien, despite the subordination clause in the recorded Declaration.[13] The relevant section of Fla. Stat. § 720.3085(1) reads:

> When authorized by the governing documents, the [homeowners'] association has a lien on each parcel to secure the payment of assessments and other amounts provided for by this section. Except as otherwise set forth in this section, the lien is effective from and shall relate back to the date on which the original declaration of the community was recorded. *However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien in the public records of the county in which the parcel is located. This subsection does not bestow upon any lien, mortgage, or certified judgment of record on July 1, 2008, including the lien for unpaid assessments created in this section, a priority that, by law, the lien, mortgage, or judgment did not have before July 1, 2008.*[14]

---

[9] Doc. No. 131. The Declaration, Section 6.8 entitled "Subordination of the Lien," reads:
The lien of the assessment provided for in this Article VI shall be subordinate to tax liens and to the lien of any mortgage recorded prior to the recordation of a claim of lien, which mortgage encumbers any Lot or Unit and is in favor of any institutional mortgagee and is now or hereafter placed upon a portion of The Properties subject to assessment; provided, however, that any institutional mortgagee when in possession or any receiver, and in the event of a foreclosure, any purchaser at a foreclosure sale, and any institutional mortgagee acquiring a deed in lieu of foreclosure, and all persons claiming by, through or under any such purchaser or mortgagee, shall hold title subject to the liability and lien of any assessment becoming due after such foreclosure (or conveyance in lieu of foreclosure). Doc. No. 131 Exhibit 1.

[10] Doc. No. 123. IBM Lender Business Process Services, as servicer for Federal, filed the proof of claim on October 28, 2011.

[11] Doc. No. 123. The Court granted debtors' motion to value (Doc. No. 25) and held the value of the property at 1061 Providence Lane, Oviedo, FL is $165,000. Doc. No. 120, FN 1 (Seminole County Property Appraiser determined the value is $164,714).

[12] Doc. No. 120 at 3. *See* 11 U.S.C. § 506(b); *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951 (2004) (interpreting § 506(b)).

[13] Doc. No. 131.

[14] Fla. Stat. § 720.3085 (emphasis added).

Alafaya claims this statute makes Alafaya's lien superior to Federal's mortgage lien, and as such, Alafaya is over-secured and entitled to its full claim of $1,025.55, which includes post-petition fees, costs, and expenses.

The relative lien priority of the two parties' claims is significant because the value of the home is not enough to pay both parties' claims in full. If Alafaya holds a superior interest to Federal's mortgage lien, Alafaya has an over-secured claim in the full allowed amount of $1,025.55. If Alafaya has an inferior interest, Alafaya's claim is wholly unsecured, and Alafaya will receive treatment as an unsecured creditor under debtors' plan of reorganization. Alafaya as an unsecured creditor is not entitled to the portion of its claim for post-petition fees and expenses because § 506(b) of the Bankruptcy Code[15] authorizes a creditor to recover post-petition fees, costs, and other expenses only if the creditor holds an over-secured claim.[16]

In this case, § 720.3085 does not apply because Alafaya never filed a claim of lien for debtors' delinquent HOA fees. Alafaya's continuing lien, granted as of the date of the Declaration, is not equivalent to a claim of lien as required by the statute. The Declaration clarifies the difference. Section 6.1 of the Declaration automatically creates a continuing lien that relates back to the Declaration when fees are assessed, but according to Section 6.8, a *claim of lien* does not occur automatically. Alafaya specifically must have recorded a claim of lien in the public records to be entitled to elevated priority under § 720.3085, which it never did. Therefore, Fla. Stat. § 720.3085 does not apply.

Notice is a fundamental principal of property law.[17] Recording a claim of lien puts all others on notice of an encumbrance on property. In Florida, an HOA is entitled to lien priority only if it records a claim of lien and its declaration places others on notice that it intends to seek priority

---

[15] All references to the Bankruptcy Code shall be to 11 U.S.C. § 101 *et seq.*

[16] 11 U.S.C. § 506(b). See *In re Electric Machinery Enterprises, Inc.* 371, B.R. 549, 550-51 (Bankr. M.D. Fla. 2007) (discussing four reasons why courts have held that unsecured creditors are not entitled to fees and costs).

[17] *Bessemer v. Gersten*, 381 So.2d 1344, 1348 (Fla., 1980) (citing *Certain Lands v. Ideal Farms Drainage District*, 156 Fla. 774, 778, 24 So.2d 585, 587 (1945); *Feemster v. Schurkman*, 291 So.2d 622, 626 (Fla. 3d DCA 1974)).

status.[18] As the Florida Supreme Court said In *Holly Lake Association v. Federal National Mortgage Association*, "in order for a claim of lien recorded pursuant to a declaration of covenants to have priority over an intervening recorded mortgage, the declaration must contain *specific language* indicating that the lien relates back to the date of the filing of the declaration or that it otherwise takes priority over intervening mortgages."[19] Along that vein, Alafaya's primary argument that § 720.3085 applies[20] is based on footnote found in *Ecoventure WGV. Ltd.* in which the Fifth District Court of Appeals suggests that an HOA could have promoted its lien status by "including language expressly incorporating by reference the provisions of Chapter 720."[21]

Alafaya points to Section 10.22 of the Declaration that requires the Declaration "be construed in accordance with the laws of the state of Florida, both substantive and remedial" as incorporating Chapter 720 into the Declaration.[22] The Court finds this falls far short of expressly incorporating Fla. Stat. § 720.3085 because it does not refer to Chapter 720 specifically.[23] Furthermore, *Ecoventure* overlooks the fundamental mandate in Florida Statute § 720.3085 that an HOA must *first record a claim of lien in the public records* before it can trump another claim.

Even if Alafaya did file a claim of lien, which it has not, two District Court of Appeals in Florida have held § 720.3085 does not operate retroactively to improve a lien's priority to a position it did not have prior to July 1, 2008.[24] Both the Second and Fifth District Courts of Appeals in Florida noted that a retroactive application of the statute would be an unconstitutional impairment of contracts and "would operate to severely, permanently, and immediately change the parties' economic relationship . . . a circumstance not supportable under the law."[25] The apparent purpose of this statue is to give homeowners' associations in Florida at least some protection that their liens

---

[18] Fla. Stat. § 720.3085.
[19] *Holly Lake Ass'n v. Federal Nat. Mortg. Ass'n*, 660 So.2d 266 (Fla. 1995) (citing *New York Life Ins. & Annuity Corp. v. Hammocks Community Ass'n, Inc.*, 622 So.2d 1369 (Fla. 3d DCA 1993)).
[20] Doc. No. 131.
[21] *Ecoventure WGV, Ltd., v. Saint Johns Northwest Residential Ass'n, Inc*., 56 So.3d 126, 128 n.3 (Fla. Dist. Ct. App. 5th 2011) (citing *Angora Enters., Inc. v. Cole,* 439 So.2d 832 (Fla.1983)).
[22] Doc. No. 131, Exhibit 1.
[23] *See Coral Lakes Comm. Ass'n, Inc., v. Busey Bank, N.A.,* 30 So.3d 579, 584 (Fla. Dist. Ct. App. 2d 2010).
[24] *See Ecoventure,* 56 So.3d 127-28; *Coral Lakes,* 30 So.3d at 583-84.
[25] *Ecoventure,* 56 So.3d at 128 (citing *Coral Lakes,* 30 So.3d at 584).

will not be completely disregarded should a homeowner fail to pay HOA dues and then lose his home to foreclosure. However, imposing those protections on lenders holding liens recorded *prior* to July 1, 2008, such as Federal, would "result in an immediate diminishment in the value of [their] contract[s] . . . a result repugnant to our constitutions."[26] Federal's lien relates back to the dates of its 2007 mortgage, and the 2008 Florida statute cannot reach back to alter the priorities established at that date.

For these reasons, Alafaya may not rely on Florida Statute § 720.3085 to elevate its lien priority ahead of Federal. No creditor, had it looked, would have been able to determine that Alafaya was claiming a priority interest ahead of any mortgagees because Alafaya never gave appropriate notice through a claim of lien. As a result, Alafaya's HOA lien remains subordinate to Federal's mortgage lien, and Alafaya's claim is unsecured.

Alafaya claims that this result is inequitable because debtors will retain their home and avoid their obligation to pay the pre-petition HOA assessment.[27] But this is exactly what Alafaya bargained for. Alafaya drafted the Declaration and purposefully subordinated its lien to all first mortgagees, presumably "to induce lenders to extend mortgages on property subject to the Declaration."[28] The homeowners in the neighborhood benefit from this arrangement,[29] and all have

---

[26] *Coral Lakes,* 30 So.3d at 585.

[27] The case Alafaya cites to support this argument, *In re Rivera*, does not apply because debtors are not seeking a discharge of post-petition HOA assessments. The Court in *Rivera* held that a debtor may not be released from its obligation to pay *post-petition* assessments because an HOA lien is a covenant running with the land. Debtors in this case are seeking to discharge *pre-petition* HOA fees. Bankruptcy Code § 523(a)(16) clarifies the distinction:
> A discharge under 727 … does not discharge an individual debtor from any debt—(16) for a fee or assessment that becomes due and payable *after* the order for relief to . . . a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, *but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising <u>before</u> entry of the order for relief in a pending or subsequent bankruptcy case.*

[28] *Ecoventure,* 56 So.3d at 127 (describing the incentives an HOA uses to induce mortgage lenders to extend mortgages on properties subject to an HOA declaration, including subordinating their HOA interest and assessing all homeowners for delinquent fees when one homeowner fails to pay).

[29] *Coral Lakes,* 30 So.3d at 585. Presumably, residential mortgages in the neighborhood would be more expensive (i.e., have higher interest rates) if mortgagees' interests always were subordinate to HOA liens because second priority liens are riskier and subordination impairs the marketability of a mortgage on the secondary market. *Id.* The HOA assessments are to be used for the "maintenance, operation, management and insurance of the Common Properties [of the neighborhood] . . . and to promote the health, safety, welfare and recreational opportunities of the Members of the [HOA]." Doc. No. 131, Exhibit 1.

agreed to pay an additional assessment should one homeowner fail to meet its obligation to pay HOA dues as promised.[30] Alafaya's contention that "to allow the [d]ebtors to escape liability for these amounts, means that the remaining paying owners in the community will have to pay the [d]ebtors' share of the common expenses"[31] is simply disingenuous.

The subordination clause in the Declaration induced Federal to loan debtors the money to purchase the residential property in exchange for a secured priority lien. Florida Statute § 720.3085 does not apply to alter the parties' priorities because it does not operate retroactively. Alafaya, however, never filed a claim of lien or otherwise noticed its intention to seek a priority interest. Accordingly, debtors' motion to value[32] is granted. Federal has an allowed secured claim of $165,000 and an allowed unsecured claim of $121,352.74.[33] Alafaya's claim is wholly unsecured.

### Debtors' Objection to Alafaya's Claim is Sustained

Debtors next object to the amount of Alafaya's unsecured claim to the extent that Alafaya requests any amounts for post-petition attorney' fees, costs, interest, or any other post-petition charge.[34] Debtors argue Alafaya's allowed unsecured claim should be limited to the $165 HOA assessment and the $3.31 in pre-petition interest because Alafaya has proven it was owed these amounts at the time debtors filed bankruptcy. Debtors specifically object to Alafaya's request for $250 in legal fees for pursuing a foreclosure because Alafaya incurred this expense post petition.[35] Alafaya disputes the $250 in legal fees was incurred post petition, but has presented no evidence to support its claim.

---

[30] Doc. No. 131, Exhibit 1, Section 6.8 ("Any unpaid assessment which cannot be collected as a lien against any Lot or Unit by reason of the provisions of this Section 6.8 shall be deemed to be an assessment divided among, payable by and a lien against all Lots and Units as provided in Section 6.1 of this Article VI, including the Lot or Unit as to which the foreclosure (or conveyance in lieu of foreclosure) took place.").
[31] Doc. No. 131 at ¶ 11.
[32] Doc. No. 120.
[33] Doc. 120 at 3. *See* 11 U.S.C. § 506(b); *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951 (2004) (interpreting § 506(b)).
[34] Debtors' Objection to Claim of Alafaya Woods Homeowners Association (Doc. No. 120).
[35] Doc. No. 120 at 3.

The Court will sustain debtors' objection as to any additional fees because, even though Alafaya submitted an itemized proof of claim, the claim lacks significant dates. Alafaya has a valid claim for the HOA fee and interest because the first two entries in Alafaya's proof of claim are dated and show that debtors owed a $165 HOA fee and accrued interest on that assessment of $3.31 at the time they filed bankruptcy. Alafaya, however, has not produced any evidence to prove it incurred other pre-petition costs in its proof of claim. Alafaya could have rebutted debtors' claim objection by filing a detailed billing statement showing the costs accrued pre-petition, but it failed to do so. Despite having full knowledge of debtors' objection to any additional fees beyond the delinquent HOA fees, Alafaya has not provided a shred of evidence that would support the full amount of its claim. Upon a claim dispute, a creditor has the obligation to prove the amounts it claims to be owed.[36]

Debtors' objection to Alafaya's claim is sustained. Alafaya has an allowed, unsecured claim of $168.31, which includes pre-petition HOA assessment of $165 and $3.31 for accrued interest as of the date of debtors' bankruptcy petition. All other claim amounts are disallowed.

## **Debtors' Motion for Cram Down is Granted**

Debtors have filed a plan of reorganization that proposes to pay Alafaya's unsecured claim of $168.31 in full in Class 18.[37] Alafaya objected to this treatment and to the confirmation of debtors' plan. In response, Debtors filed a motion to cram down its plan on Alafaya under § 1129(b) of the Code.[38]

---

[36] Once a claimant has presented evidence of a valid claim, the burden of proof shifts to an objecting party to produce evidence "equivalent in probative value to that of the creditor to rebut the prima facie effect of the proof of claim." *In re Southern Cinemas, Inc.*, 256 B.R. 520, 526 (Bankr. M.D. Fla. 2000). An objecting creditor can do this by producing specific and detailed allegations that dispute the claim, or by presenting legal arguments based on the claim and its supporting documentation (or lack thereof) that question the validity of its claim. *In re Taylor,* 363 B.R. at 308 (citations omitted). The creditor then bears the ultimate burden of persuasion to prove its claim by a preponderance of the evidence. *Id.*

[37] Debtors' Amended Plan of Reorganization (Doc. No. 132); Objection of Creditor to Confirmation of Debtors' Second Amended Plan of Reorganization and Objection to Debtors' Motion for Cram Down of Class 18 (Doc. No. 140). Debtors' plan treats Alafaya differently depending on the amount of its unsecured claim. If Alafaya had an allowed unsecured claim of the full amount it requested, $1,025.55, debtors' plan would treat it as a general unsecured claim and pay it 1%, or $10.25.

[38] Doc. No. 136.

Courts will confirm plans of reorganization notwithstanding an impaired creditor's objection as long as all the other requirements of § 1129(a) are met,[39] the plan does not discriminate unfairly, and the plan is fair and equitable with respect to each class of claims or interests *that is impaired under*, and has not accepted, the plan.[40] "As to a dissenting class of unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full . . . or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such impaired unsecured class will not receive or retain under the plan on account of such junior claim or interest any property.'"[41]

In this case, Alafaya has no cause to complain. Alafaya is not impaired such that it can obstruct confirmation by voting against the plan.[42] Debtors' plan proposes to pay Alafaya's allowed claim of $168.31 in full. As an unimpaired creditor, Alafaya is not entitled to vote for or against debtors' plan because unimpaired creditors are deemed to have accepted a proposed plan under § 1126(f), even if they do not agree with the treatment. Therefore, because Alafaya is not impaired and may not vote against the plan, debtors' motion for cram down is granted.

In conclusion, Debtors' motion to value Alafaya's claim is granted because Florida Statute § 720.3085 does not apply. Debtors' objection to Alafaya's claim is sustained. Alafaya has an unsecured claim for $168.31 that will be paid in full in Class 18. Alafaya is not an impaired creditor, and Debtors' motion for cram down is granted. A separate order consistent with this opinion shall be issued.

DONE AND ORDERED in Orlando, Florida, on May 23, 2012.

        KAREN S. JENNEMANN
        United States Bankruptcy Judge

---

[39] Except for 11 U.S.C. § 1129(a)(8) which requires all impaired creditors to consent to a plan.
[40] 11 U.S.C. § 1129(b)(1).
[41] *In re Lett,* 632 F.3d 1216, 1219 (11th Cir. 2011) (citing *Bank of American Nat. Trust and Sav. Ass'n v. 203 N. LaSalle Street Partnership,* 526 U.S. 434, 441–42, 119 S.Ct. 1411, 1415–16, 143 L.Ed.2d 607 (1999)).
[42] 11 U.S.C. § 1124(1).

Copies provided to:

Debtors:  Carlos Alberto Jimenez, Jr. and Maribel Jimenez, 1601 Silhouette Drive, Clermont, FL 34711

Debtors' Attorney:  Kenneth D. Herron, Jr., 1851 West Colonial Drive, Orlando, FL  32804

United States Trustee's Office, Attn: Miriam G. Suarez, 135 W. Central Blvd., Suite 620, Orlando, FL 32801

Creditor/Attorney for Creditor:  Alafaya Woods Homeowners Association, c/o Robyn Severs Braun, Taylor & Carls, P.A., 150 N. Westmonte Drive, Altamonte Springs, FL  32714

Creditor/Attorney for Creditor:  Federal National Mortgage Association, c/o Kevin A. Comer, 9204 King Palm Drive, Tampa, FL  33619-1328